HOLT agt. COMMISSIONERS of EXCISE, etc.

CARDOZO, J. Immediately on the submission of this case, being convinced that very little, if anything, could be added to the argument of the distinguished counsel for the plaintiff, and being informed by the learned counsel for the defendants, that he should not in the case of Falk against the same parties argue further any of the points which had been discussed in this case, and I must add that his argument already made had exhausted the subject—and the case being one of great public interest and importance, I commenced the examination of the matter, putting aside all other engagements, and devoting myself to it night and day, except when actually occupied in court, but intending nevertheless, to withhold my opinion until the Falk case had been finally submitted to me. But the proceedings before the several magistrates yesterday seem to demand that there should be no further delay, and that I should make known the results of my investigations, and I therefore proceed to express my views as follows :

*George W. Holt* agt. *Jackson S. Schultz, et al.*—On the 14th of April, 1866, the legislature of this state passed a law (*Chap.* 578 *of the Laws of* 1866), entitled "an act to regulate the sale of intoxicating liquors within the metropolitan police district of the state of New York," by the third section of which it is provided that "from and after the first day of May, 1866, no person or persons shall within the said metropolitan police district, exclusive of the county of Westchester, publicly keep, or sell, give away or dispose of any strong or spirituous liquors, wines, ale or beer, in quantities less than five gallons at a time, unless as he or they may be licensed, pursuant to the provisions of this act, and may be permitted by it."

The act creates a board of excise—points out who may be licensed, how application for licenses shall be made, and the duties of those who may become licensed; and compliance with its requirements is enforced by very stringent provisions. By the 16th section, it is declared that every person who shall violate "any of the foregoing provisions of this act"—to some of which I have referred—shall for each offense be guilty of a misdemeanor, and on conviction shall be punished by fine or imprisonment, or both. The act contains many other sections, the constitutionality of some of which is disputed, but in the view I take of the case, no specific mention need be made of them.

Prior to the passage of this law, the plaintiff in this case, under the act of the legislature of April 16th, 1857, (*chap.* 628, *p.* 405), and in conformity with its pro-

In the matter of James De Vaucene.

duty and regulating the conduct of the persons who may receive licenses under the said act, and in reference to the sale and other disposition of strong and spirituous liquors, wines, ale or beer, and imposes upon sheriffs, constables or officers of the police the duty of enforcing the said act, and confers upon them certain powers for the execution of that duty which, in the view I have taken of the case, it is necessary to refer to in detail, and concludes by declaring that all acts and parts of acts inconsistent with the provisions of the said act are thereby repealed, so far as the same shall apply to the said metropolitan police district, except the county of Westchester, and that the said act shall take effect immediately.

---

visions, procured from the then board of commissioners of excise for the city and county of New York, a license as ah inn keeper "to sell strong and spirituous liquors and wines, to be drank in his house and on his premises," from the 7th day of June, 1865, until that license should "expire by operation of law, or be revoked for a violation of the provisions of the aforesaid act." By the 4th section of that act, all licenses "when issued shall be in force, unless revoked, until ten days after the third Tuesday in May next succeeding the granting of such license, and in the city of New York until fifty days thereafter." By the 26th section, which alone confers the right of revocation, the court of sessions is authorized in certain cases, and upon notice to the party interested, "to inquire into the circumstances and to revoke" a license granted to a person violating the provisions of the act. No right of revocation, except for cause, and to be exercised in the manner I have mentioned, is reserved by the act.

To procure a license under that law the plaintiff paid the sum of thirty dollars, the amount required of him by the then board of commissioners—fixed by them under and pursuant to the authority conferred by the second section of the statute. More than two months of the period specified in the license remained unexpired on the first day of May last, and no provision for compensation to the plaintiff for the loss of the unexpired term of that license is made by the act of 1866; nor is there any clause in it saving the rights of persons whose licenses had not then expired. Under these circumstances the plaintiff has filed his complaint, setting forth substantially the matters I have mentioned, and charging, among other things, that upon the faith of the license under the act of 1857, he had bought a large stock of wines and liquors, a considerable portion of which yet remains upon his premises and unsold; that he wishes and intends to exercise the powers and rights which he claims are secured to him by his first license, and to prosecute his business, notwithstanding the act of 1866, and he insists that if the defendants, or any of them, who are charged with the execution of the last mentioned statute, should cause him to be arrested, as they may do, for each violation of its provisions, which will be very numerous, he will sustain great and irreparable injury. A temporary injunction restraining any interference with the plaintiff or his business, upon the part of he defendants, by virtue or in pursuance of the act of 1866, was granted by me and argument has been made by dis-

In the matter of James De Vaucene.

It appears to have been passed on the 14th day of April, 1866, and had, if valid, taken effect when the act complained of was committed. I have already stated that none of the allegations in the return were denied, and I here add that it was admitted by the counsel of De Vaucene on the argument, that at the time of the sale mentioned in the complaint made against him, he had no license from any excise board whatever authorizing him to make such sale, but he claimed and insisted that the act referred to therein, was unconstitutional and wholly void, and that consequently such sale did not constitute an offense for which he could be taken or detained in custody.

tinguished counsel upon both sides, upon a motion to continue it until final judgment in the action.

With the question, whether the act of 1866 be wise or impolitic—whether it be calculated to advance or to retard and prejudice the cause of temperance, I have, in my judicial capacity, nothing to do. To all arguments on those matters, and similar considerations, I have only to apply the spirit of the remarks which I made on another occasion, when it was argued that only a certain view of a legal proposition "would satisfy the public." I said then, and I say now, "the question is not what will satisfy the public, but what does the law demand? With that everybody must and will be satisfied—for that is the law, and ours is a law-abiding community."

Considerations of policy must be addressed to the legislature, not to those who are charged with the duty of expounding its enactments. I am sacredly abligated impartially to ascertain the law according to my best judgment, and when I have thus arrived at a conclusion I am similarly bound to declare it, whatever it or its consequences may be.

Three principal questions arise in this case.

*First.* Whether the plaintiff has such an interest as entitles him to a standing in court.

*Second.* If he has, whether the remedy by injunction is appropriate; and lastly, and most important, whether the act of 1866 is unconstitutional.

The defendants object that the plaintiff, by applying for and accepting a license under the present act, has surrendered any rights he might have had under his previous license, and that therefore, he cannot maintain this action; and of course, if it be true that he must ultimately be defeated in the suit, the preliminary injunction should be dissolved. But I cannot concur with the learned counsel for the defendants that any such surrender has been shown. It is not suggested that any formal release was executed by the plaintiff, nor that the license was ever delivered up to the defendants; but I am asked to infer its surrender from the mere fact of applying for a license under the statute in question. This I think unwarrantable. The plaintiff's application under the new statute was not incompatible with an intention to assert the validity of his old license. It was a precautionary act. If his old license were constitutionally destroyed by the recent legislation, he needed a new one. If the new statute were void, he could not give it vitality. He would get nothing by a grant under a void law, but he lost

In the matter of James De Vaucene.

I will briefly examine such objections against the validity of the act as appears to be applicable to the case before me.

*First.* It is said that this act is in violation of section 16, article 3 of the constitution of this state, which provides that no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title. The objection assumes that the act in question is of the character referred to in that section. This assumpton is not warranted or authorized by the provisions of the act. It is in no sense a private one. Nor is it, in my opinion, local within the meaning of the constitution. It is true that it applies in its practical operation to a

nothing by taking that which was worthless. Besides, in one sense, the application for the new license was, as the complaint charges, compulsory, because if the act were constitutional, which every law presumptively is, the plaintiff had no alternative but to apply for a license, if he did not wish to sacrifice the property which he had purchased on the faith of his license under the act of 1857—if he did not mean to be totally deprived of the right to continue the business he had established. He could not be required to determine the grave question of the constitutionality of the statute ; and the fact that he placed himself in a position to take its benefits, if it should be upheld, is no reason to presume, in the absence of any other evidence, that he surrendered, or meant to surrender, his previously acquired rights, or to deny to him the privilege of impugning in the courts, the constitutionality of the statute. The defendants cannot be heard to say that the plaintiff had the alternative to take a license from them or not, as he pleased, and that therefore his doing so was voluntary, while at the same time they assert, that if he did not take one, he would have no right to sell liquor at all, and must lose both his stock in trade and the business he had established. A license thus taken is taken by compulsion, even though it be true that the defendants did not so much as invite the plaintiff to make the application ; and if taken coercively, there is no pretense for inferring a surrender of previously acquired interests.

I am, therefore, of opinion that the first objection raised by the defendants is untenable and must be overruled ; and that the plaintiff, if the license granted to him under the act of 1857 conferred a vested right, which will necessarily be involved in the third question which I have stated, has such an interest as will enable him to come into court and ask its judgment in the premises.

This brings me to the next inquiry, which is whether, under the circumstances of the case, the remedy by injunction will be proper, if the act in question be found to be unconstitutional.

Upon this point it seems to be scarcely necessary to do more than refer to the case of *Wood* agt. *The City of Brooklyn* (14 *Barb. S. C. R.* 425).

"Disreputable imprisonment" to which the plaintiff would be sub'ect, is distinctly put by Judge STRONG as a sufficient reason for granting an injunction. I do not mean to be understood that in my judgment this case presents no other reason for equitable interference, but it seems to me to be enough to place it upon the same ground which was approved by that eminent and accurate jurist.

limited district of the state, but it relates to a subject affecting the general welfare and interest of the whole state, and not of that district only. At the time of its passage the excise act of 1857 (*chapter* 628 *of Laws*, 1857), entitled " an act to suppress intemperance and to regulate the sale of intoxicating liquors," which was applicable to the whole state, was in full force, and it is apparent from the provisions of the act in question, that its general scope and object were to alter the general law in reference to the board of excise, and to the other matters in which they are inconsistent. The effect of the change is to regulate a subject of vital interest and importance to the whole community by

Still it may be well to cite a few passages from Judge STORY's work on equity jurisprudence, which appear to be directly in point in this case. It should be remembered that this action seeks to protect property. Its object is to prevent irreparable damage to the business of the plaintiff, which, notwithstanding the opposing affidavit, the court must see, will follow, if he be interfered with as provided by the act in question. Such an interference amounts to a nuisance, which, it is well settled, will be restrained when private individuals suffer an injury distinct from that of the public in general.

In section 926 of his work on equity jurisprudence, Judge STORY says : "Where the injury is irreparable, as w⁻ ere loss of health, loss of trade, destruction of the means of subsistence, or permanent ruin to property, may or will ensue from the the wrongful act or erection—in every such case courts of equity will interfere by injunction in furtherance of justice and the violated rights of the party." Again in section 928 : "It is upon similar grounds that courts of equity interfere in cases of tresspasses, that is to say, to prevent irreparable mischiefs, or to suppress multiplicity of suits and oppressive litigation." Enough I think has been quoted to show that there can be no doubt of the right to grant an injunction to protect the property of the plaintiff. The learned counsel for the defendants erred in supposing that the cases cited by him are authorities against this view, or support his position that injunction should not be allowed, even if the statute be conceded to be unconstitutional. On the contrary, many of them, as well as the case of *Wood* agt. *Draper* (4 *Abb. P. R.*), decided by the present chief judge of the court of appeals, not cited by the counsel, admit that the remedy by injunction is a proper one, and only put the refusal to allow it upon some ground or defect of parties plaintiff, or want of proper allegations in the complaint. Thus, in *Wood* agt. *Draper*, (*supra*) when the right to grant an injunction was asserted and established, it was refused in that case, because it was held that the plaintiff, suing simply as a tax-payer, and having no interest in the subject matter, except that which was common to all the tax-payers of the city, could not maintain an action in his individual name, without an averment that the suit was brought on his own behalf, and " also on behalf of all others having a like interest." Again, in *Thompson* agt. *The Commissioners of the Canal Fund*, which was also a suit by a taxpayer, Mr. Justice MITCHELL said that relief by injunction was never granted merely to prevent an officer from carrying out a law of the state because it was deemed unconstitutional, unless some equity was at the foundation of the bill—

In the matter of *James De Vaucene*.

two acts instead of one, and it is substantially the same in
its operation as a single law would be, which declared that
the sale of ardent and spirituous liquors in one portion of
the state should be regulated in one way by certain regula-
tions, and in the residue in another way by different regula-
tions.

If, however, it be conceded that the act is a local one, it is
nevertheless valid. It does not embrace more than one sub-
ject, which is the regulation of the use of ardent and spirit-
uous liquors, wines, ale or beer, mentioned in the act, within
the metropolitan police district and exclusive of Westches-
ter ; its different provisions all tend to that end, and the title

which is precisely the case here. Each of the other cases cited by the counsel
will be found, upon a careful examination, to be either foreign to the present
question or else to be an authority, though the remedy may have been refused in
that particular instance, for asserting the propriety of allowing it whenever, as
here, a fit case for it be made.

The second objection taken by the defendants' counsel, cannot, therefore, be
sustained.

Is the act of 1866 unconstitutional?

Is it repugnant either to the prohibition in the federal constitution, the supreme
law of the nation, which prevents any state from passing any law impairing the
obligation of a contract (*art.* 1, § 10, *subdivision* 1), or does it contravene the
fundamental law of our own state, which declares that "no person shall be
deprived of life, liberty or property, without due process of law?" (*Art.* 1, § 6.)

I think it is opposed to both. I shall not stop to examine whether the act under
review annuls the unexpired licenses issued under the statute of 1857. The
learned counsel upon both sides concede and assert that it does, and therefore, I
feel at liberty to assume it as indisputable. Nor is there any doubt that if the
third section of the statute be void as to any class of citizens, that it is void as to
all ; because it is manifest that the act did not mean to, and does not create dif-
ferent classes, upon some of whom it should operate, and upon some of whom it
should not. Nor is there any room to dispute that if that section is invalid, as it
is such an important part, and indeed, the life and being of the whole scheme of
the act, without which all the other provisions would be futile, the whole statute
must share its fate and be declared unconstitutional. That these views respect-
ing such an act as the one under consideration are sound, is conclusively estab-
lished by *Wynehamer's case*, (13 *N. Y. Rep.* 378).

The sole question, then is, did the licenses granted under the act of 1857 create
such a contract or vest such rights as cannot constitutionally be impaired or
revoked. I do not doubt that the legislature, under its inalienable right, might,
notwithstanding those licenses, have passed laws which should regulate the sale
of liquor under them, but I have no hesitation in saying that, under pretense of
regulation, a law cannot be sustained which, like the present, has the effect to
render a previous grant void. This is not regulation, it is destruction.

I shall not review or express my views of the decisions of courts of other states
which were cited by the defendants' counsel, and which he argued established,

sufficiently expresses that subject. Although it refers to the whole of the metropolitan district, and does not except the county of Westchester, that omission is no objection. The district does, in fact, include all the territory to which the act especially relates, and the title also declares in general terms that the act regulates the sale of intoxicating liquors. This is sufficient; an abstract of all its provisions is not necessary. (*See* *The Sun Mutual Insurance Company* agt. *The Mayor, &c. of New York,* 4 *Selden, p.* 242; *and Brewster* agt. *The City of Syracuse,* 19 *N. Y. Rep. p.* 117, *&c.;* see also *The People* agt. *The Supervisors of Orange,* 17 *N. Y. Rep. p.* 235.) It has been decided that if any subject is

---

that such licenses as those in question conferred no vested right, but were revocable at pleasure: because, however learned the courts pronouncing them have been, and even if they go to the full extent which the counsel for the defendants contended they did, I cannot receive them as authority in this state, where I understand our courts to have clearly and plainly decided principles with which they are utterly inconsistent. Nor will it be necessary to consider and apply the numerous citations from the elementary books and the decisions of the courts of the United States, which were urged upon me by the learned counsel for the plaintiff—many of which bear pointedly upon the question involved—because that the license was *property,* and could not thus be annihilated, can be demonstrated from the cases decided by our own courts.

Before proceeding further, I ought to remark that the right of revocation is only claimed by the defendants' counsel on the ground that the constitutional prohibition has "no application to the exercise of police powers," which he asserts the revocation of the license to be. It is not pretended that the plaintiff has been deprived of his property by "due process of law," unless this law can be upheld upon the principle mentioned, and therefore the sphere of examination necessary to the determination of the case, is very greatly restricted. It will only be material, then, to inquire whether the license was a contract within the provisions of the federal constitution, or property within that of the constitution of our state; and the cases which I now cite are referred to simply to establish the proposition that a license is such a contract, and that rights acquired under it become "vested rights."

In the case of *Wood* agt. *The City of Brooklyn,* before cited, Justice STRONG, speaking of a license to sell liquor which had been granted to the plaintiff in that suit, under the state law, says: "For this the law required him to pay, and he no doubt has paid a compensation to the city, and he has a vested right to the privileges which it confers so long as it remains in force. But by the decision of the court of appeals in the case of *The Mayor* agt. *The Second Avenue R. R. Co.* (32 *N. Y. Rep. p.* 261), reviewing and affirming the decision of the general term of the supreme court in this district, this point has, in my judgment, been passed upon and settled, and settled so as, so far as I am concerned, to be conclusively adjudicated, unless and until the court of last resort shall see fit to reconsider its opinion. In that case it appeared that the common council of the city of New York had authorized the construction of a railroad track in certain streets of the

embraced in the act which is not expressed in its title, that does not render the act void ; it is still valid as to the subject that is expressed therein. (*The Town of Fishkill* agt. *The Fishkill and Beekmantown Plankroad Company*, 22 *Barb. Rep.* 634; *The People* agt. *The Same*, 27 *Id. p.* 445, *&c.* ; *The People* agt. *McCann*, 16 *N. Y. Rep. p.* 58, *&c.* ; *Williams* agt. *The People*, 24 *Id. p.* 405, *&c.* ; *The People* agt. *Lawrence*, 36 *Barb. p.* 184, *&c.*)

*Second.* It is claimed that the third section of the act divests the owner of his property without due compensation. Such is not the effect of its provisions. So far as relates to the sale of liquors specified therein, it is substantially the

city, and the running of cars upon it. The resolution authorizing the grant required, that before the permission should take effect, the grantees should enter into an agreement with the mayor, etc., "to abide by and perform the stipulations and provisions therein contained, and also all such other regulations or ordinances, as may be passed by the common council relating to said railroad." The suit was brought to recover penalties for running the cars without paying the annual license fee which an ordinance subsequently passed, require should be paid for every passenger railroad car. Opinions that the license fee could not be exacted, were delivered by Justices CLERKE and SUTHERLAND, of the supreme court. (*See* 21 *How.* 257.) The opinion of Judge SUTHERLAND is so clear and explicit, and contains language so much more apposite to the present case than I could select, that I shall quote several of its passages. He starts by saying : "I look upon the questions raised by the demurrer in this case as a question of property, of vested rights, resting on or secured by grant or contract." So in the present case, the license is property—a vested right—and as Judge SUTHERLAND said in that case, citing *Dartmouth College* agt. *Woodward* (11 *Wheat.* 511), "It as much within the protection of the constitution as any other property or right resting on or derived from contract."

Again, the judge says : "No doubt the city corporation has power to impose a a license fee for the use of public carriages, but he concludes, that "after having licensed a public carriage for a certain fee, for a certain term, or for a certain term without the payment of any fee, it has no right during the term to impose the condition of the payment of an additional license fee in the former case, or of any fee in the latter. A similar question was presented in the case of the mayor, etc., against the Third Avenue Railroad Company in the court of appeals, and a like disposition was made of it, opinions being declared by Judges PARKER and CAMPBELL. That case was decided in September term, 1865. Now it is manifest that those declarations could only have been made on the theory that the license, or permission, or resolution, whatever it was termed, was a contract which could not be impaired. Other cases might be cited. Does the present differ in principle from those cases ? Not at all. Did not the state, then, make a contract with the plaintiff?

The legislature created commissioners of excise—it authorized them to grant licenses for certain periods upon payment of certain sums of money; and in pursuance of that authority, the state, through its thus created agents, for a valu-

same as the old excise law, and is merely a regulation of such sale, and it is entirely different from the prohibitory law entitled "an act for the prevention of intemperance, pauperism and crime," which was declared to be unconstitutional in the cases of *Wynehamer* agt. *The People* and *The People* agt. *Toynbee* (3 *Kernan, p.* 378, &c). It must be deemed as a settled law that it is competent for the legislature to regulate the sale and disposition of spirituous liquors. That principle was fully recognized by the court of appeals in the two cases last cited, and cannot now be questioned.

*Third.* It is insisted that certain provisions of the law regulating the conduct of persons having licenses, and giv-

able consideration, conferred upon the plaintiff the right to sell liquor for a definite period.

Is it possible to conceive of any reason why that should be less binding than a deed of land, executed by the proper officers of the state, would be ? or why the legislature should or could have the power to annul the one and not the other? Whether you call it a grant, a contract or a license, is immaterial. The faith of the state, for a valuable consideration, was pledged to the plaintiff, that he might carry on a certain business for a fixed time, and he can no more be deprived of that right than he could be of land which the state might have granted to him in fee. The constitution of the country prevents it, and common honesty forbids it. The use of it, as well as of land granted by the state, might be regulated; but under pretense of regulation, all use of either species of property could not be prevented. But all use of the plaintiff's license is prevented. The license itself is annulled. There is nothing inconsistent with these views in any of the cases in our own state relied upon by the defendants. They were all cases where the grant remained unrevoked, the use only being regulated. As, for instance, in the oft-cited case of *The Brick Church* agt. *The Mayor* 5 (*Cowen*, 538), where the city prohibited premises it had conveyed to the plaintiffs from being used any longer as a cemetery. That was a legitimate exercise of police power. But it is very different here. The plaintiff, under the law purporting to regulate the sale of liquor, has, without compensation, been absolutely deprived of property for which he paid the state a valuable consideration.

The injustice of any other principle than that which I have thus maintained will become yet more palpable, when it is remembered that if the legislature could destroy the unexpired term of the plaintiff's license when it had but sixty days to run, it might equally do so one day after it was granted, and without returning a dollar of the consideration which he had paid. And if the legislature may thus to-day deprive the plaintiff of one species of property, it may to-morrow in similar manner deprive other citizens of another species. There would be no limit to its destructive power. A doctrine which might lead to results, or support conduct so unfair and so dangerous to all our citizens, should not be sustained, unless upon the most explicit adjudications of courts whose authority is binding and conclusive.

Upon the grounds which I have thus stated, without elaborating them further, or assigning other reasons which also convince my mind of its invalidity, I feel

In the matter of James De Vaucene.

ing the power of arrest to public officers, and to close and keep closed any place in which there shall have been any violation of the act, are unconstitutional, and that the entire act is therefore void. I do not deem it necessary or proper to consider or express any opinion on these questions. Those provisions are distinct and have no necessary connection with that under which the question is raised by the return in this case. It is well settled that a law invalid in some of its provisions may, nevertheless, be valid, and enforced as to the residue. The rule on that question is well stated by Judge SELDEN in the case of *The People* agt. *Toynbee* (3 *Kernan, p.* 441). He there says : " The general rule on this

constrained to declare the act of April 14th, 1866, unconstitutional and wholly void ; and therefore the motion to continue the injunction must be granted.